IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA      *

v.                             * **Criminal Case No. BAH-24-0077**

ALEKZANDER BYWATER      *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MOTION TO SUPPRESS STATEMENTS

Now comes the defendant, Alekzander Bywater("Mr. Bywater"), by and through his attorney, Christopher C. Nieto, and hereby respectfully moves this Court, pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, to suppress any and all statements, admissions and confessions allegedly given by the defendant, whether oral, written or otherwise recorded, which the government proposes to use as evidence against the defendant at trial. In support of the motion, Mr. Bywater states as follows:

## INTRODUCTION

Mr. Bywater is charged in a multi-count indictment alleging a Conspiracy to Commit Sexual Exploitation of a Child, two counts of Sexual Exploitation of a Child, and two counts of Advertising Child Pornography, in violation of 18 U.S.C. 2251(a), 2251(c), and 2251(d). The indictment alleges, in essence, that Mr. Bywater and his co-defendant produced and advertised child pornography involving a minor victim while they were living in Mexico.

This investigation began in February of 2024 when FBI agents were reviewing materials posted on the "dark web" during which time they found two videos for sale on a website hosted by the Tor network. Upon review of these videos, the agents concluded that they constituted child pornography and began working on identifying the participants in the video. Using facial

recognition software, cross-referenced with MVA and social media records, law enforcement were able to develop Mr. Bywater and his wife as suspects in the production and participation in this video. Additional investigation revealed that they were living in Mexico. Federal agents obtained a United States federal arrest warrant, charging Mr. Bywater and his wife, via complaint, with Sexual Exploitation of Children.

FBI agents worked in concert with their federal counterparts in Mexico to arrest and extradite Mr. Bywater and his wife back to the United States. However, rather than go through the official extradition process, the FBI decided to use an immigration ruse to get the Bywaters back to the United States without having to go through the official process that is required when arresting someone in a foreign country. With the assistance of Mexican immigration authorities, FBI agents went to the Bywaters' house in Mexico and indicated there was an immigration issue that the Bywaters needed to address. The Bywaters were never told the real reason: there was an arrest warrant lodged against them in the United States. They complied with the Mexican and American authorities and were flown back to the United States.

Upon their arrival, the Bywaters were immediately arrested and separated from each other. Each of them was brought separately to rooms where they were interrogated by FBI agents. With regards to Mr. Bywater, he was interrogated for over an hour, during which time he allegedly made various inculpatory comments that the Government used to obtain additional evidence and may seek to introduce at trial. *See Exhibit 1: Audio Recording of Interrogation*. However, these statements were obtained in violation of Mr. Bywater's privilege against self-incrimination, his right to counsel as guaranteed by the Fifth and Sixth Amendments to the United States Constitution, the Supreme Court's holding in Miranda v. Arizona, 384 U.S. 436 (1966) and were otherwise involuntary.

−2−

Indeed, the federal agents who interrogated Mr. Bywater failed to provide him with Miranda warnings until three minutes into the interrogation. This is significant because during that time frame, the agents were peppering Mr. Bywater with questions germane to their investigation prior to advising him of his right to remain silent. When they finally did tell Mr. Bywater of his rights, their advice of rights was lacking and insufficient. It is decidedly unclear whether Mr. Bywater understood his full rights or whether he elected to waive them. Additionally, and despite the agents' best efforts to dissuade him from remaining silent, Mr. Bywater clearly invokes his right to counsel ten minutes later when he states, "I would like to have a lawyer." Undeterred by Mr. Bywater's invocation of his right to counsel, the federal agents ignore him and continue to coerce and unduly pressure him to answer their questions. They threaten him with outlandish consequences that can only be avoided if he were to waive his right to counsel and speak with the agents. Mr. Bywater eventually succumbs to this pressure and makes various statements to law enforcement that the Government will use against him at trial.

## **ARGUMENT**

Statements made during a custodial interrogation are admissible only if the Government establishes that law enforcement officers both (1) adequately informed the defendant of his Miranda rights and (2) obtained a waiver of those rights. <u>Miranda v Arizona</u>, 384 U.S. 436, 467 (1966). A valid waiver of <u>Miranda</u> rights must have been (1) voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion or deception"; and consequences of the decision to abandon it." <u>Moran v. Burbine</u> 475 U.S. 412, 421 (1986). "If the accused indicates that he wishes to remain silent, "the interrogation must cease." <u>Edwards v. Arizona</u>, 451 U.S. 477, 482 (1981)(citing <u>Miranda</u>, 384 U.S. at 474).

### 1.  FBI agents initially interrogated Mr. Bywater without <u>Miranda</u> warnings.

<u>Miranda</u> warnings are required when a subject is interrogated while in custody. The test for determining whether an individual is "in custody" for these purposes is whether, under the totality of circumstances, the "suspect's freedom of action is curtailed to a degree associated with formal arrest.' <u>Berkemer v. McCarty</u>, 468 U.S. 420, 4004 (1984. They key question is whether, viewed objectively, "a reasonable man in the suspect's position would have understood his position" as being "in custody." <u>Id</u> at 422. Additionally, the term "interrogation" under <u>Miranda</u> refers not only to express questioning but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301 (1980).

In this case, Mr. Bywater was unquestionably in custody when he was first questioned by the FBI at the Dulles International Airport, as he was arrested pursuant to the warrant issued in this instant case. He was also unquestionably interrogated, from 0:16:16 to 0:19:32, by these agents before receiving any Miranda warnings The agents indicate, almost at the inception of the interrogation, that they intend to explain to Mr. Bywater his rights but, before doing so, start interrogating Mr. Bywater about his nationality, how he ended up in Mexico, with whom does he live in Mexico, and whether he has dual or Mexican citizenship. These questions were posed precisely because the agents hoped to elicit an incriminating response, one that might connect Mr. Bywater to this incident and any materials that were brought to the United States from Mexico. Since Mr. Bywater was not read his Miranda rights prior to this questioning, and thus failed to knowingly and voluntarily waive them, these statements must be suppressed.

**2. FBI agents failed to provide Mr. Bywater adequate Miranda advice of rights and failed to ensure Mr. Bywater understood those rights.**

At 0:19:32 of the interrogation, the FBI agents ("FBI") finally explain to Mr. Bywater ("AB") his <u>Miranda</u> rights:

> FBI: So, I'm going to read your rights and then we'll talk. Then I'll explain what's going on and then if you decide you don't want to talk, you don't have to, okay? So, before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during the questioning. If you cannot afford a lawyer, one will be appointed for you before any questions. If you wish, if you decide to answer questions now without a lawyer present, you have the right to stop answering any time. And that's the key one, right? That's the one you don't read about on law and order. You don't see it on TV. If you decide to hear me out and hear what this is about, if you're uncomfortable, if you're not happy with what's going on, just stop. Okay? Do you understand that?
> AB: Yeah. I appreciate that.
> FBI: So, yeah. Absolutely. So, you understand where I'm coming from?
> AB: Mm-hmm.
> FBI: Okay. So, if at any point you're not comfortable with what I'm talking about, you know, just say, hey, I'm not comfortable with this and nobody's going to be mad at you, okay? So, how long have you been down in Mexico?

It is important to note that the agent, upon completing the Miranda warnings, immediately sought to undercut them and coerce Mr. Bywater into talking with them. They tell him that the most important right, the "key" one out of all the rights that were explained, was the right to hear out the FBI and decide to stop the interrogation at a later point. This minimized the importance of the preceding rights Mr. Bywater possessed and was clearly an attempt to manipulate Mr. Bywater into ignoring those rights and proceed with the interrogation.

Additionally, it is not clear whether Mr. Bywater even understood all his rights. The FBI tries to verify that Mr. Bywater understood the rights as they were explained to him by asking him, "Do you understand that?" and "Do you understand where I'm coming from?"

However, by posing these two questions immediately after trying to coerce Mr. Bywater into talking with law enforcement by stressing the "key" right he has, the FBI renders any response to these subsequent questions ambiguous. It is unclear whether Mr. Bywater's answers are in response to the FBI's questions as they (1) pertain to his understanding of his rights in general or (2) whether they are in response to whether he can stop the interview whenever he wants. This confusion is compounded by the fact that the agent does not ask Mr. Bywater directly if he understands his rights as they have been explained to him nor does he ask if Mr. Bywater wishes to waive all his rights and speak with the FBI. To be clear, the FBI agent's goal is to get Mr. Bywater to talk. His decision to ask these two questions within the context of a multi-faceted conversation is an intentional and eventually successful attempt to circumvent the Miranda warnings.

**3.  FBI agents failed to honor Mr. Bywater's invocation of his right to counsel.**

A review of the recording of Mr. Bywater's interrogation reflects that while he was advised of his Miranda rights, he did not waive them. In fact, he explicitly tells interrogators that he wants a lawyer before speaking with them. Regardless of this fact, the agents persisted in cajoling him into answering questions, a clear violation of the right to remain silent and to counsel.

After being apprised of his Miranda rights, and after twelve minutes of the federal agent trying to influence Mr. Bywater's decision to speak with them, Mr. Bywater makes his intentions clear at 0:32:00:

> FBI: I don't know what it is. That's... We can talk about that. But saying nothing doesn't make that go away. Right there, that's big enough to...
> AB: I will... I want to say this. Okay. That I don't... have enough confidence in my ability to articulate... what you're asking.
> FBI: Well, let's... Let's go into that for just a second.

AB: And so, I would like... I would like to, I think, get a lawyer.
FBI: If I can, real... Okay.
AB: *__I would like to have a lawyer__*, just to help me articulate these things.
(emphasis added)
FBI: Well, I don't think that's... And I'm not trying to...
AB: What do you mean? I'm not... Okay, look...
FBI: And I'm telling you you can get a lawyer, and I'm not mad at you at all. I meant what I said. What I'm telling you is... there won't be another chance.

To invoke the right to remain silent or the right to counsel, Mr. Bywater's invocation must be "unambiguous." Berghuis v. Thompkins, 560 U.S. 370, 381-82 (2010). An invocation is unambiguous when a "reasonable police officer under the circumstances would have understood" the suspect intended to invoke his Fifth Amendment rights. Tice v. Johnson, 647 F. 3d 87, 107 (4th Cir. 2011). Such was the case here; Mr. Bywater tells the agents unambiguously that he wants a lawyer. Tellingly, the FBI's immediate response to this statement is a negative one: "Well, I don't think…" More troubling, they continue to try to persuade Mr. Bywater that he should change his mind about wanting an attorney.by falsely reminding him that "there won't be another chance" to tell his side of the story.

"Under black-letter Fifth Amendment law, once a suspect unambiguously indicates "that he wishes to remain silent, the interrogation must cease." United States v. Abdallah, 911 F. 3d 201, 213 (4th. Cir 2018) (citing Miranda, 384 U.S. at 473-474). Similarly, once the right to counsel is asserted, a subject in custody may not be interrogated outside counsel's presence "unless the accused himself initiates further communication, exchanges or conversations with police." Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). The onus is not on Mr. Bywater to be persistent in his demand for counsel but rather, the responsibility falls to the law enforcement officers to scrupulously respect that demand.

Despite the actions of the FBI in this interrogation, Mr. Bywater's invocation of this important right was not an opportunity for law enforcement to challenge that invocation. It was not an opportunity to continue to discuss his decision or to persuade Mr. Bywater the virtue in continuing with the interrogation. Indeed, the actions of the FBI agents throughout this interrogation, actions that were designed to persuade and overbear Mr. Bywater's free will through improper interrogation tactics, is precisely the type of behavior Miranda was designed to prevent.

**WHEREFORE**, because of the constitutional violations alleged herein, Mr. Bywater respectfully requests that the Court enter an Order suppressing any and all statements made by Mr. Bywater.

Respectfully submitted,

/s/

CHRISTOPHER C. NIETO, #30031
Nieto Law Office
233 East Redwood Street, Suite 1000C
Baltimore, Maryland 21202
Phone: (443) 863-8189
Fax: (443) 378-5723
Email: cnieto@nietolawoffice.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 20226, a copy of Defendant's Motion to Suppress Statements, which was electronically filed in this case, was emailed to Reema Sood and Kyle Reynolds.

/s/
Christopher C. Nieto, #30031
Attorney for Mr. Bywater